# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

CASE NO. 1:18-CV-20809-JLK

DENNIS A. LALONDE,

    Plaintiff,

v.

ROYAL CARRIBEAN CRUISES, LTD.,
a Liberian corporation,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT II OF PLAINTIFF'S SECOND AMENDED COMPLAINT

THIS CAUSE comes before the Court upon Defendant Royal Caribbean Cruises, Ltd.'s ("RCCL") Motion to Dismiss Count II of Plaintiff's Second Amended Complaint (DE 42), filed November 28, 2018.[1]

### I. BACKGROUND

This case arises from Plaintiff's injury on the FlowRider, an amusement attraction on the deck of the RCCL cruise ship *Allure of the Seas* in which an individual first lies on their belly and then stands on a kind of surf board on "a thin sheet of water [flowing] over a sloped surface [that] simulate[s] the surface of a wave" and moves the individual across the FlowRider (DE 39, ¶ 12). Plaintiff alleges that, after his instructor on the FlowRider negligently let go of his right wrist, he "fell violently backwards onto the FlowRider[, the] water jets [of which] then propelled him up into the wash-out zone where he violently struck the shortened back wall" (*id.* ¶ 46), fracturing a vertebra in his neck (*id.* ¶ 48). Following his surgery upon airlift to a hospital in Fort

---

[1] Plaintiff filed a Response in Opposition (DE 43) on December 12, 2018; RCCL filed a Reply (DE 44) on December 19, 2018. Accordingly, this matter is ripe for disposition.

Lauderdale, Plaintiff alleges he continues to suffer from pain and limited mobility in his neck and weakness in his arms (*id.* ¶ 49–50).

Count I of Plaintiff's Second Amended Complaint is for negligence and Count II is for strict products liability alleging the FlowRider has a defective design and defective warnings (*id.* at 18, 22, 27). On September 5, 2018, the Court granted RCCL's Motion to Dismiss Count II of Plaintiff's First Amended Complaint for strict products liability (DE 19), citing that (1) Plaintiff "fail[ed] to address what modifications were allegedly made by [RCCL]," and (2) "Plaintiff is unable to show that [RCCL] sold or manufactured the product containing the defect" (*id.* at 2). As the dismissal was without prejudice, Plaintiff filed his Second Amended Complaint (DE 39) on November 7, 2018.

The Second Amended Complaint addresses the first of the defects identified by the Court in alleging that RCCL made modifications to the FlowRider product that contributed to Plaintiff's injuries:

> 25. Unlike land-based FlowRiders, Defendant's FlowRider on the M/S ALLURE OF THE SEAS has a short "wash-out" zone. Defendant modified the FlowRider by shortening the length of the was-out zone in order to fit the FlowRider onto the deck of its cruise ships. Due to the shorter length, a person who falls is propelled into the back wall at a high velocity . . .
> . . .
> 29. Defendant placed its FlowRiders on its cruise ships with no padding or other safety devices . . .
> 30. Padding systems and other safety features were in use on land-based FlowRiders and were readily available to Defendant to be incorporated into the design of the shipboard FlowRiders.

(DE 39). Moreover, Plaintiff alleges that RCCL modified the warnings on the FlowRider, which also rendered the product defective (*see id.* at ¶ 33–39). However, RCCL argues that Plaintiff's strict products liability claim is still insufficient where he does not support his allegation that RCCL was "engaged in the business of selling" the FlowRider, as required by Section 402A of

2

the Restatement (Second) of Torts (DE 42, at 4). RCCL argues that Count II should now be dismissed with prejudice (*id.* at 7).

## II. DISCUSSION

### A. Legal Standard on Motions to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). As a corollary, allegations absent supporting facts are not entitled to this presumption of veracity. *Id.* at 681. When evaluating a motion to dismiss, the Court must take all of the well-pled factual allegations as true. *Id.* at 664. However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 663. The Court must dismiss a complaint that does not present a plausible claim demonstrating entitlement to relief.

### B. Strict Products Liability

Strict products liability is recognized "as part of the general maritime law." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865–66, 106 S. Ct. 2295 (1986). The Restatement (Second) of Torts Section 402A defines the claim of strict products liability as follows:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> (a) **the seller is engaged in the business of selling such a product**, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

3

> (2) The rule stated in Subsection (1) applies although
>> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (Am. Law Inst. 1965) (emphasis added). Therefore, as courts have recognized, the plaintiff need not be a buyer in privity of contract with the seller. *Pullum v. Cincinnati, Inc.*, 476 So. 2d 657, 659–60 (Fla. 1985). Moreover, it is settled law that entities upstream from the seller, including manufacturers and entities within the distribution chain which profit from its sale, are liable. *See, e.g., Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 510–11 (Fla. 2015). By definition, a strict products liability claim applies to sellers of products, rather than services. *Porter v. Rosenberg*, 650 So. 2d 79 (Fla. 4th Dist. Ct. App. 1995); Restatement (Second) of Torts § 402A cmt. a. ("This Section states a special rule applicable to sellers of products.").

### C. Plaintiff's Strict Products Liability Claim Does Not Sufficiently Allege that RCCL Sold a Product

RCCL argues that Plaintiff does not state a claim for strict products liability in Count II, because he does not sufficiently allege the essential element that RCCL sold the FlowRider after modifying it. It is fundamental that a claim for strict products liability requires a seller "engaged in the business of selling" the product. Restatement (Second) of Torts § 402A(1); *see also Samuel Friedland Family Enters. v. Amoroso*, 630 So. 2d 1067, 1068 (Fla. 1994) ("The underlying basis for the doctrine of strict liability is that those entities within a product's distributive chain who profit from the sale or distribution of [the product] to the public . . . should bear the financial burden[.]"). In contrast to a claim of simple negligence, a strict products liability claim requires this element regardless of whether RCCL is a co-designer or co-

4

manufacturer of the FlowRider by virtue of modifying it from land-based FlowRiders, as Plaintiff alleges (DE 39, ¶ 7, 11, 13, 18, 20, 22, 23, 24, 28, 37, 66, 67, 68, 70, 77). Apart from a conclusory allegation by Plaintiff that RCCL "placed the FlowRider with a modified design onto the consumer market place" (*see* DE 39, ¶ 24), Plaintiff alleges no facts to support that RCCL (the sole defendant in this action) sold or resold the vessel *Allure of the Seas*—or its "component part" (DE 43, at 10), the modified Flow Rider—to *anyone*, rather than selling a service package to Plaintiff which included the right to access and use premises it owns and controls.

Plaintiff nevertheless argues that "[b]ased upon *East River*, *Amoroso*, and *Morris*, this Court should deny RCCL's Motion to Dismiss Count II" (DE 43, at 17). First, Plaintiff cites the *East River Steamship* case, which explains that "the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *E. River S.S. Corp.*, 476 U.S. at 864–65. However, in incorporating the tort of strict products liability into maritime law, the high court first noted the historical ubiquity of this type of claim in federal maritime law. *See id.* at 865 ("Courts of Appeals sitting in admiralty overwhelmingly have adopted concepts of products liability."). In contrast, the theory Plaintiff now asks the Court to adopt, that RCCL modified the FlowRider that caused Plaintiff's injury, but did not sell the FlowRider, is historically quite novel.

Plaintiff next analogizes to the *Amoroso* case from the Florida Supreme Court, which held that a lease of a product, rather than a sale of a product, was sufficient for this tort. *See Amoroso*, 630 So. 2d at 1071. In that case, a plaintiff injured by a sailboat with a defective crossbar was held to state a claim for strict products liability claim against the company that leased him the sailboat, and against the hotel that leased waterfront property to the sailboat rental company. *Id.* However, Plaintiff's assertion (nowhere present in his Second Amended

5

Complaint) that "RCCL is engaged in the business of leasing . . . the [modified] FlowRider to its guests" (*id.* at 7) is not supported by any allegations that a passenger using the FlowRider rents the FlowRider as a product (*i.e.*, contracts to possess the FlowRider as lessee). *Amoroso* does not hold that a mere passenger on a sailboat who is injured on the sailboat may hold the sailboat owner liable for strict products liability by virtue of the owner's modifications to the sailboat.

Additionally, Plaintiff cites to *Morris v. Royal Caribbean Cruises, Ltd.*, Case No. 11-23206-CIV-GRAHAM, 2012 WL 13013187 (S.D. Fla. Feb. 7, 2012), which held that a strict products liability claim against RCCL involving the very same product at issue here, the FlowRider, was properly alleged. *Morris*, 2012 WL 13013187, at *2. That case relied on a single case from the Louisiana Supreme Court, *Straley v. Calogne Drayage & Storage, Inc.*, 346 So. 2d 171 (La. 1977), in which a building tenant's employee was injured by an elevator that the building modified from its original design. *See Straley*, 346 So. 2d at 176. However, the Louisiana Supreme Court did not discuss the common law claim of strict products liability at issue here, but rather premised its decision on "Louisiana Civil Code articles 2315 and 2316," *id.*, the first of which pertaining to general liability for damages, and the second pertaining to negligence.

In contrast, RCCL cites three federal and state rulings that a claim for strict products liability is not stated where an amusement park guest is injured on a land-based amusement park attraction. *Sells v. Six Flags Over Texas, Inc.*, No. CIV.A.2:86-CV-1574-D, 1997 WL 527320, at *2 (N.D. Tex. Aug 14 1997); *Bobryk v. Lincoln Amusements, Inc.*, No. CV950547084S, 1996 WL 24566, at *4 (Conn. 1996); *Siciliano v. Capitol City* Shows, 475 A.2d 19, 25 (N.H. 1985). The court in *Sells* noted that "plaintiffs have not cited, and the court has not located, any

6

authority for the proposition that Six Flags can be considered a 'seller' of its amusement park ride for the purposes of liability under § 402A." *Sells*, 1997 WL 527320, at *2.

Moreover, Plaintiff cites no Florida or binding federal maritime (Eleventh Circuit or Supreme Court) case that expands the law of strict products liability to encompass an entity that modifies a product but is not in the business of selling it or even renting it out as a product, and the Court is unaware of any such precedent.

### III. CONCLUSION

With his Second Amended Complaint, Plaintiff alleges modifications RCCL made to the FlowRider he used that contributed to his injury, but offers no support for his allegation that RCCL is engaged in the business of selling the modified FlowRider so that it may be strictly liable as a product seller, as distinct from its liability under a theory of simple negligence, nor has Plaintiff offered a sufficient basis for the Court to extend the tort to encompass the facts here. Therefore, Defendant's instant Motion to Dismiss Count II is meritorious. Accordingly, it is **ORDERED, ADJUDGED, and DECREED** that RCCL's Motion to Dismiss Count II of Plaintiff's Second Amended Complaint **(DE 42)** is hereby **GRANTED**, and Count II of Plaintiff's Second Amended Complaint **(DE 39)** is hereby **DISMISSED with prejudice**.

**DONE** and **ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 9th day of January, 2019.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc: **All Counsel of Record**